# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

_____
)
BEULAH J. ROBINSON,              )
)
          Plaintiff,      )
)
    v.               )      Civil Action No. 11-2212 (RBW)
)
RED COATS, INC.,             )
)
         Defendant.     )
_____)

## MEMORANDUM OPINION

The plaintiff, Beulah J. Robinson, brings this action against her employer, Red Coats, Inc. ("Red Coats"), pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e-2, 2000e-3 (2006), the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623 (2006), and the District of Columbia Human Rights Act ("D.C. Human Rights Act"), D.C. Code §§ 2-1402.11(a)(1), 2-1402.61(a)–(b) (2001), alleging discrimination based on her race and age and retaliation for filing a discrimination claim against Red Coats with the Equal Employment Opportunity Commission ("EEOC"). Complaint ("Compl.") ¶¶ 23, 26, 33, 39. Currently before this Court is the defendant's Motion for Summary Judgment ("Def.'s Mot."). After carefully considering the parties' submissions,[1] the Court concludes that it must grant the motion in part and deny it in part for the following reasons.

_____

[1] In addition to the documents already referenced, the Court considered the following filings in reaching its decision: (1) the Memorandum of Points and Authorities in Support of Defendant's Motion for Summary Judgment ("Def.'s Mem."), (2) the Plaintiff's Opposition to Summary Judgment ("Pl.'s Opp'n"), (3) Points and Authorities in Support of Plaintiff's Opposition to Defendant's Motion for Summary Judgment ("Pl.'s Mem."), (4) the Plaintiff's Statement of Material Facts That Are the Subject of Genuine Dispute ("Pl.'s Facts"), and (5) the Defendant's Reply Brief in Support of Its Motion for Summary Judgment ("Def.'s Reply").

# I. BACKGROUND

The plaintiff, Beulah Robinson, is an African-American woman who was seventy-five years of age when she was terminated from her position with the defendant as an office cleaner. Pl.'s Facts at 1, 2 ¶ 1; see Def.'s Mem. ¶¶ 1, 3, 6, 18. She was seventy-one years old when she began working for the defendant in June 2006. Pl.'s Facts ¶ 3; Def.'s Mem. ¶ 3. The parties dispute whether she was newly hired by the defendant or was simply retained when the defendant assumed the contract for cleaning services at 600 Maryland Avenue, N.W., in the District of Columbia, the location where the plaintiff worked as a cleaner at the time when she became a Red Coats employee. Pl.'s Facts ¶ 3; Def.'s Mem. ¶¶ 3–5. Before beginning her employment with the defendant, she had worked as a cleaner for over twenty years. Pl.'s Facts ¶ 3; see Def.'s Mem. ¶ 5. As a Red Coats employee, her primary job responsibilities were to empty trash receptacles and perform light dusting. Pl.'s Facts ¶ 1; Def.'s Mem. ¶ 6. While employed by Red Coats, the plaintiff was a member of a union with a Collective Bargaining Agreement governing numerous aspects of the parties' relationship. See Pl.'s Facts ¶ 4; Def.'s Mem. ¶ 22.

The sequence of events leading to the current litigation began when the plaintiff was reassigned from 600 Maryland Avenue, N.W., to an office building on K Street. Pl.'s Facts ¶ 4; see Def.'s Mem. ¶¶ 8–9. The defendant claims that she was transferred after it received complaints from the property manager that the plaintiff was not emptying all of the trash cans in her assigned area. Def.'s Mem. ¶¶ 8–9. The plaintiff successfully challenged her reassignment through her union, Pl.'s Facts ¶ 4, and she was relocated to an office building at 1225 Connecticut Avenue, N.W., in the District of Columbia in July 2010, Def.'s Mem. ¶ 10; see Pl.'s Mem. at 23.

The plaintiff began working at the Connecticut Avenue location in July 2010 and was supervised by Daniel Caceres, the Cleaning Supervisor, and Carmen Caceres, the Assistant Cleaning Supervisor. Def.'s Mem. ¶¶ 10–11; see Pl.'s Facts ¶ 2. The plaintiff asserts that when she arrived at the location for her first day of work, Ms. Caceres told her "Oh no[,] you can't work here" and then said, "[W]ell, you can work here today[,] [b]ut after today, you know, you can't work here anymore." Pl.'s Facts ¶ 2. The plaintiff was the only African-American and the oldest employee at that location. Id. ¶ 5(2); Pl.'s Opp'n, Exhibit ("Ex.") 5 (Deposition of Daniel Caceres ("Daniel Caceres Depo.")) at 61:13–63:5.

The plaintiff was initially assigned to clean the seventh and eighth floors of the building. Def.'s Mem. ¶ 13; see Pl.'s Facts ¶ 5(2). From July through September 2010, Mr. Caceres issued repeated verbal warnings to the plaintiff, stating that he had been receiving complaints from the tenants of those floors that trash receptacles in the plaintiff's assigned area were not being emptied. Pl.'s Opp'n, Ex. 1 (Deposition of Beulah Robinson ("Robinson Depo.")) at 39:12–40:10, 40:19–41:10; Def.'s Mem. ¶ 12. In either late September or early October 2010, the plaintiff was reassigned to clean the lower floors.[2] Pl.'s Facts ¶ 5; Def.'s Mem. ¶ 13. On October 4, 2010, the defendant claims that Mr. Caceres issued a verbal warning to the plaintiff, wherein he told the plaintiff that she "was missing trash every day, that she was never finishing her job, and that she was always asking for help." Def.'s Mem. ¶ 14. On that same day, the defendant contends that Mr. Caceres issued his first written warning to the plaintiff, stating that she "was again missing trash bags [on] the third floor," that "the crew had to stay late to finish [her] job," and that the plaintiff "told Mr. Caceres that [failing to empty trash bags] was not a

---

[2] The plaintiff asserts that she was assigned to the second, third, and fourth floors, while the defendant states that she was assigned to the third and fourth floors only. Pl.'s Facts ¶ 5(2); Def.'s Mem. ¶ 13. This discrepancy is immaterial to the plaintiff's claims.

problem unless the tenant complained." Id. ¶ 15. The defendant asserts that Mr. Caceres issued a second written warning on October 7, 2010[3] to the plaintiff before the final warning and notice of termination was issued on October 13, 2010. Id. ¶ 17.

According to the plaintiff, she did not receive any of the written warnings until after her termination. Pl.'s Facts ¶ 6. She claims that she was forced to work alone to complete her tasks, while other younger Hispanic employees were able to work in crews. Id. She also alleges that she was given only four hours to complete the same work that other employees were given five hours to complete, id. ¶ 5(1), and that she was disciplined and ultimately terminated for not servicing trash receptacles within her first two weeks on the lower floors when other employees were typically given two weeks to learn where the trash receptacles were located, id. ¶ 5(2).

The plaintiff filed a Charge of Discrimination against Red Coats with the EEOC on October 1, 2010, complaining of both age and race discrimination in violation of Title VII and the ADEA. Pl.'s Mem. at 29; Def.'s Mem. ¶ 19. The plaintiff's EEOC Charge listed the defendant's address as 1225 Connecticut Avenue, N.W., the office building to which she was assigned when she filed her administrative complaint. Pl.'s Mem. at 29–30; Def.'s Mem. ¶ 19. Although the defendant has a "storage room" in that building, Pl.'s Opp'n, Ex. 3 (Deposition of

---

[3] There is some conflicting evidence in the record concerning the date when this warning, attached as Exhibit 7 to the defendant's memorandum, was issued. The defendant argues that "[d]espite the fact that this warning was dated October 1, 2010, the testimony by Red Coats' corporate designee was that the date on this document was written in error, and the warning was actually prepared on October 7, 2010." Def.'s Mem. ¶ 16 n.1. Despite contending elsewhere in her filings that she did not receive any written warnings until after her termination, Pl.'s Facts ¶¶ 6–7, the plaintiff asserts that the warning was actually issued on October 1, see Pl.'s Mem. at 26, 31 (disputing that dating the warning October 1, 2010 was an error and relying on the October 1 issuance date to argue that "there is a reasonable inference that Red Coats had knowledge of the EEOC Charge by Ms. Robinson because Red Coats moved Ms. Robinson to the lower floors and immediately issued the first written warning on the evening after Ms. Robinson filed her [EEOC] Charge during the day (October 1, 2010)"). Upon close review of Exhibit 7, it appears to the Court that the warning is in fact dated October 7, 2010, a conclusion supported by its identification as a "second warning." See Def.'s Mem., Ex. 7 (October 1 or 7, 2010 Written Warning) at 2. In any event, as discussed below, the discrepancy regarding the date of this warning is immaterial to the resolution of the plaintiff's claims.

Blaine Wilson ("Wilson Depo.")) at 27:2–5, the Connecticut Avenue location is not the defendant's corporate office, Def.'s Mem. ¶ 20; see Pl.'s Mem. at 30.

On October 13, 2010, the defendant terminated the plaintiff's employment, stating that she was terminated "for continuing to miss trash every day." Def.'s Mem. ¶¶ 17–18. The plaintiff alleges that on the day of her termination, Mr. Caceres told her that she was "too old to work." Pl.'s Facts ¶ 2. Under the heading, "Explanation," her notice of termination states that "She['s] still missing trash. After I [illegible] off one floor, she ask[s] for help every[]time. Las[t] week we stay late because she [did] not finish on time." Pl.'s Opp'n, Ex. 10 (October 13, 2010 Termination Notice) at 2). Under the heading "Reason for Termination or Warning," the form provides a series of options, one of which, "Emp[.] Accepted Other Work," is checked. Id.

The defendant asserts that it first received a copy of the plaintiff's discrimination complaint on October 14, 2010, when the EEOC faxed a copy of it to the company's corporate headquarters, Def.'s Mem. ¶¶ 20–21, which the plaintiff disputes, Pl.'s Mem. at 30–32. The defendant subsequently replaced the plaintiff with a younger, Hispanic woman. Pl.'s Facts ¶ 11; see Def.'s Mem., Ex. 4 (Wilson Depo.) at 34:18–19.

The plaintiff commenced this suit, alleging discrimination based on her race and age and retaliation for filing a discrimination claim against the defendant. Compl. ¶¶ 23, 26, 33, 39. The defendant then moved to dismiss the complaint, or in the alternative, sought summary judgment. Robinson v. Red Coats, Inc., No. 11-2212 (RBW), 2012 WL 3777172, at *1 (D.D.C. Aug. 30, 2012). The Court denied the defendant's motion in its entirety, finding that the plaintiff had adequately pleaded her claims in her complaint, and that summary judgment was inappropriate because the parties had not yet conducted discovery. Id. at *3–5. The parties have now completed discovery, and the defendant again moves for summary judgment.

## II. STANDARD OF REVIEW

Before granting a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56, a court must find that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is material if it might affect the outcome of the suit under the governing law, and a dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Steele v. Schafer, 535 F.3d 689, 692 (D.C. Cir. 2008) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)) (internal quotation marks omitted).

When ruling on a motion for summary judgment, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [her] favor." Anderson, 477 U.S. at 255 (citation omitted). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment." Id. The movant has the burden of demonstrating the absence of a genuine issue of material fact and that the non-moving party "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

In responding to a summary judgment motion, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Accordingly, the non-moving party must not rely on "mere allegations or denials . . . but . . . must set forth specific facts showing that there [are] genuine issue[s] for trial." Anderson, 477 U.S. at 248 (second omission in original) (citation and internal quotation marks omitted). "The mere existence of a scintilla of

evidence in support of the [non-moving party's] position [is] insufficient" to withstand a motion for summary judgment, but rather "there must be evidence on which the jury could reasonably find for the [non-movant]." Id. at 252.

## III. ANALYSIS

### A. The Plaintiff's Race Discrimination Claims

In the absence of direct evidence of discrimination, claims of employment discrimination under Title VII, the ADEA, and the D.C. Human Rights Act[4] are analyzed under the familiar three-part framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See Jackson v. Gonzales, 496 F.3d 703, 706–07 (D.C. Cir. 2007) (race discrimination under Title VII); Dunaway v. Int'l Bhd. of Teamsters, 310 F.3d 758, 760, 761–62 (D.C. Cir. 2002) (age discrimination under the ADEA); Esteños v. PAHO/WHO Fed. Credit Union, 952 A.2d 878, 889 (D.C. 2008) (discrimination under the D.C. Human Rights Act). Under this framework, the plaintiff bears the initial burden of establishing a prima facie case of discrimination, McDonnell Douglas, 411 U.S. at 802, by providing proof of "(1) membership in a protected group; (2) qualification for the job in question; (3) an adverse employment action; and (4) circumstances that support an inference of discrimination," Swierkiewicz v. Sorema N.A., 534 U.S. 506, 510 (2002) (citations omitted). If the plaintiff establishes a prima facie case, "[t]he burden then must shift to the employer to articulate some legitimate, nondiscriminatory reason for the [adverse employment action]." McDonnell Douglas, 411 U.S. at 802. Once the employer offers a legitimate, nondiscriminatory justification for its action, "the McDonnell Douglas framework— with its presumptions and burdens—disappears, and the sole remaining issue is discrimination

---

[4] Courts look to case law construing Title VII and the ADEA in analyzing claims under the analogous provisions of the D.C. Human Rights Act. See Wash. Convention Ctr. Auth. v. Johnson, 953 A.2d 1064, 1073 n.7 (D.C. 2008) (citation omitted) (ADEA); Esteños v. PAHO/WHO Fed. Credit Union, 952 A.2d 878, 886 (D.C. 2008) (citations omitted) (Title VII).

vel non." Jackson, 496 F.3d at 707 (citation and internal quotation marks omitted). The plaintiff must then present evidence to show that the employer's proffered reason is merely "pretextual," and designed to "shield[] discriminatory motives." Id. (citation omitted).

When, as here, "an employer has asserted a legitimate, non-discriminatory reason for the decision, the district court need not—and should not—decide whether the plaintiff actually made out a prima facie case under McDonnell Douglas." Brady v. Office of the Sergeant at Arms, 520 F.3d 490, 494 (D.C. Cir. 2008). Instead, the analysis should be limited to assessing whether "the employee [has] produced sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory reason was not the actual reason and that the employer intentionally discriminated against the employee on the basis of race." Evans v. Sebelius, 716 F.3d 617, 620 (D.C. Cir. 2013) (citation omitted). This determination is made

> in light of the total circumstances of the case, asking whether the jury could infer discrimination from the combination of (1) the plaintiff's prima facie case; (2) any evidence the plaintiff presents to attack the employer's proffered explanation for its actions; and (3) any further evidence of discrimination that may be available to the plaintiff . . . or any contrary evidence that may be available to the employer.

Id. (omission in original) (citation and internal quotation marks omitted). An inference of discrimination can be established "'either directly by [showing] that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.'" Jones v. Bernanke, 557 F.3d 670, 678 (D.C. Cir. 2009) (alteration in original) (quoting U.S. Postal Serv. Bd. of Governors v. Aikens, 460 U.S. 711, 716 (1983)). If no reasonable jury could conclude that the proffered reason was pretext, then summary judgment must be granted to the employer. Paquin v. Fed. Nat'l Mortg. Ass'n, 119 F.3d 23, 27–28 (D.C. Cir. 1997).

The plaintiff here has failed to produce sufficient evidence to allow a reasonable jury to conclude that the defendant's proffered reason for her termination is a pretext for racial discrimination. The defendant asserts that the plaintiff was terminated because she repeatedly failed to empty all of the trash receptacles in her assigned area. See Def.'s Mem at 11–13. Indeed, the record contains considerable evidence that the plaintiff had long-standing performance problems.[5] See Def.'s Mem., Ex. 12 (Plaintiff's Notes) at 2 (acknowledging that the plaintiff received a warning from Ms. Caceres because she asked for help and that Ms. Caceres spoke to the plaintiff regarding trash that was not removed from the third floor on October 1, and that Mr. Caceres spoke to the plaintiff on October 4 about trash can liners that had not been changed); id. at 3 (acknowledging that another worker told the plaintiff that she failed to remove all of the trash from the fourth floor on October 6); Def.'s Mem., Ex. 3 (Tuesday May 18, 2010 Email) at 2–3 (forwarding complaints from tenants in the plaintiff's assigned area at 600 Maryland Avenue, N.W. that trash can liners had not been changed even though liquid has been spilled on them and noting that "this is not the first complaint [they] have gotten about this"); Def.'s Mem., Ex. 4 (Wilson Depo.) at 44:16–45:3 (testifying that the plaintiff was reassigned from 600 Maryland Avenue, N.W. because of performance problems); Pl.'s Opp'n, Ex. 6 (Deposition of Carmen Caceres ("Carmen Caceres Depo.")) at 35:11–20 (testifying

_____

[5] The plaintiff argues that the Court cannot consider evidence of warnings about the plaintiff's performance at 600 Maryland Avenue, N.W. or when she was assigned to the seventh and eighth floors of 1225 Connecticut Avenue, N.W., because such evidence is inadmissible at trial as it is "rendered irrelevant because [the prior warnings] cannot support termination under the contract governing the parties' employment relationship." Pl.'s Mem. at 22 n.4. The issue before the Court, however, is not whether the plaintiff was properly terminated under the procedures set forth in the Collective Bargaining Agreement, but whether the plaintiff has presented sufficient evidence to allow a reasonable jury to conclude that the defendant's proffered non-discriminatory reason for her termination—poor performance—is a pretext for racial discrimination. Evidence in the record showing that the plaintiff was previously warned about problems with her performance is clearly relevant to this inquiry, regardless of whether it was sufficient to warrant termination under the Collective Bargaining Agreement.

that the plaintiff frequently failed to empty trash receptacles when she was assigned to the seventh and eighth floors of 1225 Connecticut Avenue, N.W.).

The plaintiff contends, however, that a reasonable jury could conclude that the defendant's proffered reason is a pretext for racial discrimination because she was treated differently than her co-workers, all of whom were Hispanic.[6]  Pl.'s Mem. at 21–23.  The plaintiff asserts that she was required to complete her work alone while others were permitted to work in crews, that "she was not provided with any floor plans or shown where to find the trash cans she was expected to clean each night," that she was only given four hours to complete her work, and that she was disciplined for not servicing trash receptacles within the first two weeks of her assignment to the lower floors despite a policy of allowing employees two weeks to learn the location of every trash can in an assigned area.  Pl.'s Mem. at 21–24.  Evidence that an employer treated members of a different race, color, religion, sex, or national origin more favorably in the same factual circumstances can be presented to show that the employer's stated reason for the employment action is not the real reason.  Brady, 520 F.3d at 495.

The plaintiff has identified no evidence in the record, however, that indicates that her Hispanic co-workers were provided training or floor plans, given more than four hours to complete their assigned tasks, or were not disciplined for failing to service trash receptacles

---

[6] The plaintiff makes repeated references to the fact that she was the only African-American working at the Connecticut Avenue location and that all of her co-workers were Hispanic.  See, e.g., Pl.'s Mem. at 18, 21, 22–23.  Although the plaintiff does not expressly argue such, the Court notes that this fact alone is not sufficient to raise an inference of discrimination.  Turner v. Shinseki, 824 F. Supp. 2d 99, 118 (D.D.C. 2011) (Walton, J.) (citation omitted).  In a similar vein, the plaintiff asserts that the defendant hires employees exclusively through referrals by existing employees, resulting in a workforce that is entirely Hispanic, "a recruiting process . . . expressly deemed illegal by the EEOC."  Pl.'s Mem. at 18; Pl.'s Facts ¶ 12.  While again not explicitly arguing that this alleged practice makes it more likely that the defendant discriminated against the plaintiff, the Court notes that evidence of the defendant's hiring practices is only, at best, tangentially relevant to the plaintiff's claim that she was terminated because of her race, and as such, should not be relied upon when there is ample evidence specific to her claims.  See Williams v. Boorstin, 663 F.2d 109, 115 n.38 (D.C. Cir. 1980) ("[I]t is inappropriate to rely on extrapolation from general evidence of discriminatory episodes when there is available specific evidence directly relevant to the particular plaintiff.").

within the first two weeks of assignment to a new area. Indeed, the evidence presented by the plaintiff shows that <u>none</u> of the workers were provided with floor plans or given more than four hours to complete their assigned tasks. <u>See</u> Pl.'s Opp'n, Ex. 5 (Daniel Caceres Depo.) at 23:7–11 (stating that none of the office cleaners are provided with a floor plan showing where trash receptacles are located in their assigned areas); Pl.'s Opp'n, Ex. 6 (Carmen Caceres Depo.) at 34:20–35:3 (same); Pl.'s Opp'n, Ex. 6 (Carmen Caceres Depo.) at 38:2–6 ("At that time . . . [,] they gave <u>us</u> four hours, and during those four hours <u>we</u> have to finish those two floors." (emphasis added)). And while the plaintiff's evidence establishes that her lack of training and the discipline she received for not servicing trash receptacles during her training period might have been a violation of company policy, she has not shown that any of her Hispanic co-workers were treated any differently. <u>Compare</u> Pl.'s Opp'n, Ex. 4 (Deposition of Hugo Leal ("Leal Depo.")) at 38:13–39:1 (stating that employees are generally shown where the trash receptacles are located in a new area for approximately a two-week training period), <u>and id.</u> at 23:4–10 (testifying that <u>all</u> cleaners were supposed to work five hours per shift), <u>with</u> Pl.'s Opp'n, Ex. 6 (Carmen Caceres Depo.) at 38:2–6 ("At that time . . . [,] they gave <u>us</u> four hours, and during those four hours <u>we</u> have to finish those two floors." (emphasis added)). The plaintiff's complaints about not being shown the trash receptacles that she missed similarly fail because she has not shown that her Hispanic co-workers were treated any differently. <u>See</u> Pl.'s Mem. at 23–24.

The only evidence that the plaintiff identifies that supports her argument that she was treated differently from her Hispanic co-workers is her own testimony that she "was forced to work alone while her Hispanic co-workers were allowed to work in crews." Pl.'s Mem. at 21. The plaintiff's testimony, however, establishes that she did, in fact, work as part of a crew when

she was assigned to the eighth and ninth floors of the Connecticut Avenue location from June through September 2010, and that she only worked by herself when she was reassigned to the lower floors several weeks before she was terminated. See Pl.'s Opp'n, Ex. 1 (Robinson Depo.) at 29:19–30:13, 33:6–18, 34:1–17, 39:9–11, 43:9–17. The fact that the plaintiff was permitted to work in a crew for several months—indeed, during the majority of the time she was assigned to the Connecticut Avenue location—significantly undermines her argument that the difference in treatment was based on her race. Moreover, the plaintiff has failed to present any evidence demonstrating that the individuals who were allegedly treated more favorably were "similarly situated" to her, and "[i]n the absence of evidence that the comparators were actually similarly situated to [the plaintiff], an inference of falsity or discrimination is not reasonable." Montgomery v. Chao, 546 F.3d 703, 707 (D.C. Cir. 2008) (citation and internal quotation marks omitted) (holding that evidence that the plaintiff's employer previously promoted five employees failed to demonstrate that the employer's legitimate non-discriminatory reason was pretextual because the evidence did not establish that the promoted employees were similarly situated).

The plaintiff also points to Ms. Caceres' statements on the first day of her assignment to the Connecticut Avenue location, as proof that she was subjected to discrimination. As noted earlier, she contends that Ms. Caceres stated, "Oh no[,] you can't work here," and then said "Well, you can work here today, but I don't know about after that." Pl.'s Mem. at 22. The plaintiff represents that she "understood these comments to be discriminatory based on her race because, upon meeting the remaining cleaning crew, she learned that all of the other members [of the crew] were Hispanic." Id. at 22–23. While facially neutral phrases or words may be evidence of discrimination "depend[ing] on various factors including context, inflection, tone of voice, local custom, and historical usage," Ash v. Tyson Foods, Inc., 546 U.S. 454, 456 (2006)

(per curiam), "[i]t is the plaintiff's burden to provide evidence beyond his or her own subjective

assertions of discrimination suggesting that a facially neutral term or phrase was, in fact,

discriminatory," Robertson v. Dodaro, 767 F. Supp. 2d 185, 194 (D.D.C. 2011) (citing Ash, 546

U.S. at 456).  Ms. Caceres' statements contain no discriminatory content on their face, and the

plaintiff has presented no evidence other than her own opinion from which a rational trier of fact

could conclude that her statements were racially motivated.  See Pl.'s Mem. at 22–23 (citing

Pl.'s Opp'n, Ex. 1 (Robinson Depo.) at 29:3–9 (stating that the plaintiff believed the comments

to indicate racial animus "[b]ecause I found out there were only Spanish people working

there")).  The fact that all of the other workers assigned to the Connecticut Avenue location were

Hispanic, without more, is insufficient to link Ms. Caceres' facially neutral statements to

discriminatory animus.  See Robertson, 767 F. Supp. 2d at 194 (holding that the male

supervisors' gender-neutral criticisms of the female plaintiff as "unhappy," "dismissive,"

"superior," "condescending," and "sarcastic" could not be considered statements of

discriminatory animus when the only evidence proffered by the plaintiff was her own opinion,

the gender difference of the parties, and a prior comment that she should "watch her tone"); cf.

Turner v. Shinseki, 824 F. Supp. 2d 99, 118 (D.D.C. 2011) (Walton, J.) (finding that the

plaintiff's representation that he was the only African-American in the workplace and his own

opinion that he was treated differently because of his race were conclusory allegations and thus

summary judgment was appropriate).  The plaintiff's speculation that Ms. Caceres' statements

had racial connotations cannot sustain her race discrimination claim because conclusory

allegations of discriminatory animus lacking any factual basis in the record are insufficient to

defeat summary judgment.  See Hussain v. Nicholson, 435 F.3d 359, 365 (D.C. Cir. 2006)

(rejecting the argument that the district court failed to consider evidence of "religious alliances

and animosity" because the only evidence of such animus "consisted merely of conclusory allegations in [the plaintiff's] own affidavit"); see also Galdamez v. Xerox Corp., No. 03-2326, 2005 WL 486161, at *16 (D.D.C. Feb. 28, 2005) (holding that the plaintiff's "self-serving allegations" were insufficient to show that the employer's proffered reason for termination was pretext for discrimination), aff'd, 171 F. App'x 353 (D.C. Cir. 2006).

In addition to alleging differential treatment, the plaintiff also seeks to undermine the defendant's proffered explanation for her termination by suggesting that the complaints Mr. Caceres allegedly received from tenants about her job performance were fabricated. See Pl.'s Mem. at 24 (noting that "Mr. Caceres refused to provide any specific details regarding the supposed complaints he received, and did not provide any written complaints" to the plaintiff). However, the plaintiff has not identified any evidence in the record that supports her fabrication claim other than her own speculation and the Court can find none. Without an indication otherwise, "there ordinarily is no basis for permitting a jury to conclude that the employer is lying about the underlying facts." Brady, 520 F.3d at 495. And a plaintiff cannot avoid summary judgment by relying solely on her personal opinion that her job performance was adequate, particularly when the overwhelming evidence in the record indicates that the defendant honestly believed that it was not. Vatel v. Alliance of Auto. Mfrs., 627 F.3d 1245, 1247–48 (D.C. Cir. 2011). Accordingly, the Court cannot find that a reasonable jury could conclude on this basis that the defendant's proffered explanation for the plaintiff's termination is a pretext for racial discrimination.

Finally, the plaintiff argues that the defendant's failure to follow the termination procedures outlined in the Collective Bargaining Agreement governing the parties' relationship undermines the credibility of its explanation for the demise of her employment. See Pl.'s Mem.

at 25–26.  The defendant argues in response that the plaintiff is collaterally estopped from raising

any violation of the Collective Bargaining Agreement because the purported violations have

already been addressed in a separate arbitration proceeding.  Def.'s Reply at 4–5.  There is no

dispute that the plaintiff was repeatedly verbally warned that she was failing to adequately

perform her job duties.  See Pl.'s Opp'n, Ex. 1 (Robinson Depo.) at 19:17–20:5, 30:3–8, 39:12–

40:5, 40:19–41:3, 43:4–8, 43:18–20, 44:13–45:8, 46:15–47:22, 56:10–13, 57:2–20; Def.'s Mem.,

Ex. 12 (Plaintiff's Notes) at 2–3 (acknowledging verbal warnings on October 1, 4, and 6).  An

employer's failure to follow its own procedures may be evidence of pretext, Greer v. Paulson,

505 F.3d 1306, 1319 (D.C. Cir. 2007) (citation omitted), but "[a]n employer's failure to follow

its own regulations and procedures, alone, may not be sufficient to support the conclusion that its

explanation for the challenged employment action is pretextual," Fischbach v. D.C. Dep't of

Corrs., 86 F.3d 1180, 1183 (D.C. Cir. 1996) (citation and internal quotation marks omitted).

Thus, even if, as the plaintiff contends, the defendant failed to provide her with written warnings

as required by the Collective Bargaining Agreement, the defendant's alleged failure to follow the

Agreement's termination procedures, without more, is insufficient for a reasonable jury to

conclude that the proffered justification is a pretext.

The plaintiff argues that when considered collectively the record undermines the

defendant's non-discriminatory reason for her termination and raises the inference of racial

discrimination.[7]  Relying on Evans v. Sebelius, the plaintiff contends that "'the record supports

---

[7] Although the plaintiff concedes that the alleged statement by Mr. Caceres that the plaintiff was "too old to work" is
"in the nature of age discrimination," Pl.'s Mem. at 28 n.6, she argues, without citation to case authority, that this
evidence should be considered in reference to her race discrimination claim as well because "[i]t is not an
unreasonable inference that a person who vocally expresses discriminatory intent based on a subordinate's age
would also hold racial stereotypes and use race as a basis to discriminate against the same person," id.; see also id. at
26 (referencing alleged statement by Mr. Caceres that she was "too old to work" and her replacement by a younger
woman as evidence supporting her race discrimination claim).  While this evidence is relevant to her age
discrimination claim, it is not relevant to her race discrimination claim.  Cf. Prouty v. Nat'l R.R. Passenger Corp., 99

(. . . continued)

two plausible interpretations of what happened,'" or, in other words, that a jury could believe either the defendant's explanation for her termination or her contention that the explanation is a pretext for discrimination. See Pl.'s Mem. at 26–29 (quoting Evans, 716 F.3d at 622). In Evans, the plaintiff had presented evidence that her employer had offered "shifting and inaccurate explanations" for its failure to promote her, that her supervisor referred to the African-American women on staff as "those sisters" and made derogatory comments about people from "the Hood," and that her employer promoted three white individuals at the same time that it declined to promote the plaintiff. 716 F.3d at 621–22. The plaintiff here, in contrast, has presented no evidence of inconsistency in the defendant's explanation for its decision to terminate her employment[8] or of any racially insensitive or derogatory statements by her supervisors. While she has presented evidence that under the defendant's company policy she should have been given two weeks after her reassignment to the lower floors of the Connecticut Avenue building to learn the location of the trash receptacles and that she should have been given five hours to perform her work, she has presented no evidence that any of her co-workers were treated any differently. In fact, most of the plaintiff's complaints regarding her treatment were consistent with the defendant's treatment of all of its employees. And although she contends that she never received written warnings of her performance problems as required by the parties' Collective Bargaining Agreement, the record is replete with references to verbal warnings given to the

---

(continued . . .)

F.R.D. 545, 546 (D.D.C. 1983) (holding that plaintiff alleging age discrimination was not entitled to discovery regarding race of employees because information regarding race was not relevant to age discrimination claim).

[8] The plaintiff mentions in passing that her notice of termination "falsely indicates that [she] 'accepted other work,'" Pl.'s Mem. at 17, but does not argue that the defendant has provided inconsistent explanations for her termination based on the fact that a box labeled "Emp[.] Accepted Other Work" is checked under "Reason for Termination or Warning" on her notice of termination, see Pl.'s Mem., Ex. 10 (Notice of Termination). The Court notes that this same box was checked on the plaintiff's October 4, 2010 verbal warning, see Def.'s Mem. Ex. 5 (October 4, 2010 Verbal Warning) at 2, and that another box, "Emp[.] Dissatisfied with Job" is checked on the warning dated either October 1 or 7, 2014, see Def.'s Mem., Ex. 7 (October 1 or 7, 2010 Written Warning).

plaintiff about her failure to empty trash receptacles and she can point to no opinion, other than her own, that her performance was adequate. The record here thus does not support "two plausible interpretations," Evans, 716 F.3d at 622, but only one: that the defendant's proffered reason for the plaintiff's termination is not a pretext for racial discrimination.

While the plaintiff has presented evidence that the defendant's performance expectations may be inconsistent with its policies, she has not identified sufficient evidence from which a reasonable jury could conclude that the defendant's explanation for her termination was a pretext designed to veil discriminatory intent based on her race. See Jones v. Wash. Metro. Area Transit Auth., No. 08-2193 (RLW), 2011 WL 4536968, at *3 (D.D.C. Oct. 2, 2011) (finding that summary judgment for the defendant was appropriate because statement purportedly showing racial animus was ambiguous on its face, the defendant had produced "ample factual basis" for the plaintiff's poor performance evaluations, and prior supervisors had rated the plaintiff's performance consistent with the evaluation of the supervisor who allegedly harbored racial animus). "It is not enough for the plaintiff to show that a reason given for a job action is not just, or fair, or sensible," but rather "[she] must show that the explanation given is a phony reason." Fischbach, 86 F.3d at 1183 (citation and internal quotation marks omitted). On the record in this case, that showing has not been made and the Court must therefore grant summary judgment to the defendant on the plaintiff's claims of race discrimination under Title VII and the D.C. Human Rights Act.

**B. The Plaintiff's Age Discrimination Claims**

When a plaintiff provides direct evidence of discrimination, McDonnell Douglas' burden-shifting framework does not apply. Stone v. Landis Constr. Corp., 442 F. App'x 568, 569 (D.C. Cir. 2011) (per curiam) (citing Swierkiewicz, 534 U.S. at 511); Esteños, 952 A.2d at

889 n.8.  Direct evidence of discriminatory intent alone is sufficient to survive summary

judgment.  See Stone, 442 F. App'x at 569; see also Vatel, 627 F.3d at 1247 ("The record

contains no direct evidence of discrimination—for example, a statement that itself shows racial

or gender bias in the decision—that would generally entitle a plaintiff to a jury trial.").

        With respect to the plaintiff's age discrimination claim, she has presented direct evidence

of discriminatory intent in the record.  Specifically, the plaintiff testified during her deposition

that the manager of the Red Coats crew at 1225 Connecticut Avenue, N.W., Daniel Caceres, told

her that "maybe [she is] too old to work" on the night she was terminated.  Pl.'s Opp'n, Ex. 1

(Robinson Depo.) at 30:9–10, 56:14–57:13.  An alleged statement "that itself shows . . . bias in

the decision" is sufficient to survive summary judgment.  Stone, 442 F. App'x at 569 (omission

in original) (quoting Vatel, 627 F.3d at 1247).  In Stone v. Landis Construction Corp., the Circuit

found a similar alleged statement by an employer that the plaintiff may not be able to perform

the manual labor required for the job because "you're old" to be direct evidence of

discrimination that precluded the entry of summary judgment.  Id.  This is exactly what the

plaintiff has provided here, and therefore the defendant is not entitled to summary judgment on

the plaintiff's age discrimination claims under Title VII and the D.C. Human Rights Act.

## C.  The Plaintiff's Retaliation Claims

        To prevail on a claim of retaliation under Title VII or the D.C. Human Rights Act, the

plaintiff must show that "she suffered (i) a materially adverse action (ii) because . . . she had

brought or threatened to bring a discrimination claim."  Baloch v. Kempthorne, 550 F.3d 1191,

1198 (D.C. Cir. 2008).  In order to prove retaliation, a plaintiff must show that the supervisor

who made the employment decision had knowledge of her statutorily protected activity.

Talavera v. Shah, 638 F.3d 303, 313 (D.C. Cir. 2011); McFarland v. George Washington Univ.,

935 A.2d 337, 356 (D.C. 2007). Here, the defendant argues that the plaintiff has failed to establish that her supervisor, or anyone at Red Coats for that matter, knew that she had filed a discrimination complaint with the EEOC before she was terminated. Def.'s Mem. at 14–15.

It is undisputed that the plaintiff filed her Charge of Discrimination with the EEOC on October 1, 2010, and incorrectly listed the defendant's address as 1225 Connecticut Avenue, N.W. Pl.'s Mem. at 29–30; Def.'s Mem. ¶ 19. The defendant asserts that it first learned of the plaintiff's complaint when it was faxed to the Red Coats corporate office by the EEOC on October 14, 2010, one day after the plaintiff's termination on October 13, 2010. Def.'s Mem. ¶ 19 (citing Def.'s Mem., Ex. 9 (October 14 Fax Copy of EEOC Complaint) at 2–3). In response, the plaintiff argues that a jury could reasonably infer that the defendant received notice of the plaintiff's discrimination complaint because the EEOC mailed notice of the plaintiff's EEOC discrimination complaint on October 7, and Red Coats "has a dedicated space in each building where they provide cleaning services and, therefore, could receive mail" at these locations. Pl.'s Mem. at 29–30. Further, the plaintiff contends that a jury could reasonably infer that the defendant had notice of the plaintiff's complaint before it terminated her "because Red Coats moved Ms. Robinson to the lower floors and immediately issued the first written warning on the evening after Ms. Robinson filed her Charge during the day (October 1, 2010)."[9] Id. at 31.

These allegations are insufficient to sustain the plaintiff's retaliation claim. "Although [a plaintiff] need only offer circumstantial evidence that could reasonably support an inference that

_____
[9] As noted previously, there is a discrepancy regarding the date when the plaintiff's first written warning was issued. The plaintiff relies on the October 1, 2010 date in her arguments regarding her retaliation claim. See Pl.'s Mem. at 31–32. Consequently, the Court will use this date in assessing her claim in order to give the plaintiff, as the non-moving party, the benefit of reasonable inferences in her favor. The Court notes, however, that it is ultimately inconsequential whether the warning was issued on October 1 rather than October 7 in light of the plaintiff's argument that the EEOC mailed notice of her charge of discrimination to 1225 Connecticut Avenue, N.W. on October 7. Thus, even if the later date is used, it is still impossible for events occurring on October 7 to have been triggered by a discrimination complaint that was not placed in the mail until earlier that same day.

[her supervisor] knew of her EEO activity, and context matters," a plaintiff may not rely solely on "evidence from which a reasonable jury would have had to speculate that [her supervisor] knew" about the activity to avoid summary judgment. Talavera, 638 F.3d at 313 (citations and internal quotation marks omitted). Here, the plaintiff has identified no evidence which demonstrates that anyone at Red Coats knew of her EEOC discrimination complaint when she was terminated on October 13.[10] She offers only her own speculation that Red Coats could and would receive mail addressed to it at 1225 Connecticut Avenue, N.W., where its "dedicated space" is a storage closet. See Pl.'s Opp'n, Ex. 3 (Wilson Depo.) at 27:2–5. Moreover, the plaintiff premises her temporal proximity argument on a sequence of events that does not add up: she argues that the jury could infer that the defendant had notice of her complaint because it issued her first written warning on October 1, the same day that she filed her complaint and seven days before the EEOC mailed notice of her complaint to the defendant at 1225 Connecticut Avenue, N.W. on October 7. Even indulging in the plaintiff's speculation, the facts do not give rise to the inference that the plaintiff urges. Having failed to identify any evidence demonstrating that the defendant had knowledge of her discrimination complaint when it terminated her on October 13, the Court must grant summary judgment to the defendant on the plaintiff's retaliation claim.

## IV. CONCLUSION

For the reasons stated above, the Court grants summary judgment to the defendant on the plaintiff's race discrimination and retaliation claims under Title VII and the D.C. Human Rights

---

[10] For this reason, the plaintiff's reliance on Trainor v. HEI Hospitality, LLC, 699 F.3d 19 (1st Cir. 2012), is misplaced. In that case, it was undisputed that the plaintiff's employer had received notice of the plaintiff's discrimination claim prior to the plaintiff's termination. See Trainor, 699 F.3d at 25, 28. The dispute there centered on whether the employer had already planned to discharge the plaintiff when the plaintiff's supervisor received notice of the complaint. See id. at 28–29.

Act, and denies summary judgment to the defendant on the plaintiff's age discrimination claims under the ADEA and the D.C. Human Rights Act.

      **SO ORDERED** this 27th day of March, 2014.[11]

REGGIE B. WALTON
United States District Judge

---

[11] An order consistent with this memorandum opinion shall be issued contemporaneously.